UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| WILLIAM PANTOJA,<br><br>                Petitioner,<br>     v.<br><br>PAMELA BONDI, et al.,<br><br>                Respondents. | CASE NO. C25-2440JLR<br><br>ORDER |

## I.     INTRODUCTION

Before the court is Petitioner William Pantoja's 28 U.S.C. § 2241 petition for writ of habeas corpus. (Petition (Dkt. # 1); Response (Dkt. # 14).) Respondents[1] oppose Mr. Pantoja's petition. (Return (Dkt. # 7).) Being fully advised, the court GRANTS Mr. Pantoja's petition for writ of habeas corpus.

---

[1] Respondents are U.S. Attorney General Pamela Bondi; Department of Homeland Security ("DHS") Secretary Kristi Noem; Seattle Field Office Director for ICE Enforcement and Removal Operations ("ERO") Laura Hermosillo; and U.S. Immigration and Customs Enforcement ("ICE"). (Petition at 5-6.)

ORDER - 1

## II. BACKGROUND

Mr. Pantoja is a 39-year-old Cuban national who is currently confined at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Petition at 1-3, 6.) He arrived in the United States lawfully in April 2004 via a lottery system and received lawful permanent resident status in August 2006. (*Id.* at 6.)

In November 2007, Mr. Pantoja was convicted of domestic violence and was sentenced to two years of probation. (*Id.* at 7.) In January 2011, Mr. Pantoja was detained by immigration authorities, his lawful permanent residence status was revoked, and he was ordered removed from the United States. (*Id.* at 4, 7; Benjamin Decl. (Dkt. # 8) ¶¶ 7-8; *see* Lambert Decl. (Dkt. # 9) ¶ 2, Ex. A (removal order).) At the time, however, Cuba was not accepting repatriation of its citizens who received removal orders. (Petition at 4, 7.) As a result, after spending about 90 days in custody, Mr. Pantoja was released from immigration custody on an order of supervised release ("OSUP"). (*Id.* at 7; Lambert Decl. ¶ 2, Exs. B-C (Release Notification and Order of Supervision).)

In 2023, Mr. Pantoja filed a Form I-485, seeking to adjust his status under the Cuban Adjustment Act, and a Form I-601, seeking a waiver of grounds of inadmissibility. (Petition at 7.) In May 2024, ERO learned that "a case by case nomination [for Mr. Pantoja] was submitted to the Government of Cuba, the request remained pending[,] and [] there was currently no significant likelihood of removal in the reasonably foreseeable future to Cuba[.]" (Benjamin Decl. ¶ 11.) On March 17, 2025, United States Citizenship

1  and Immigration Services ("USCIS") denied Mr. Pantoja's I-485 and I-601 applications.
2  (*Id.* ¶ 12; Petition at 7; *id.*, Ex. 3.)

3  On May 27, 2025, ICE detained Mr. Pantoja when he reported for his yearly ICE
4  check-in at the ERO office in Miramar, Florida. (Petition at 3; Benjamin Decl. ¶ 13; *see*
5  Lambert Decl. ¶ 2, Exs. G-J (documents relating to the revocation of Mr. Pantoja's
6  release).) Mr. Pantoja represents that ICE did not make a determination that he was a
7  flight risk or a danger to the community before it re-detained him. (Petition at 4.) ICE
8  then transferred Mr. Pantoja to NWIPC. (Benjamin Decl. ¶ 14.)

9  On June 25, 2025, Mr. Pantoja refused to sign a Notice of Removal to Mexico,
10 and shortly thereafter claimed fear of removal to Mexico. (*Id.* ¶¶ 15-16.) USCIS
11 dismissed the appeals of the denial of his I-485 and I-601 applications in September
12 2025. (*Id.* ¶ 17; *see* Lambert Decl. ¶ 2, Exs. E-F (decisions on appeal).)

13 Mr. Pantoja filed his petition for writ of habeas corpus on December 2, 2025.
14 (Petition.) He asserts that he cannot foreseeably be removed to Cuba because Cuba will
15 not accept him due to his criminal conviction. (*Id.* at 7-8 (discussing ICE arrest and
16 deportation statistics for Cuban nationals).) He further asserts that although ICE intends
17 to deport him to Mexico, Mexico will not accept him without his express consent. (*Id.* at
18 9.) Mr. Pantoja argues that, as a result, his removal from the United States is not
19 reasonably foreseeable, and his continued detention is unconstitutional. (*Id.* at 8-9.) Mr.
20 Pantoja seeks (1) immediate release; (2) an order preventing his re-detention unless the
21 government establishes by clear and convincing evidence at a hearing that he is a flight
22 risk or a danger to the community; (3) an order preventing his removal to a third country

without notice and a meaningful opportunity to respond; and (4) an order barring his removal to a third country pursuant to Respondents' removal policy, which Mr. Pantoja asserts is punitive. (*Id.* at 30-31.)

On December 3, 2025, the court granted Mr. Pantoja's unopposed motion to set a briefing schedule on his petition. (12/3/25 Order (Dkt. # 5).) The court further ordered that, while Mr. Pantoja's petition remains pending, Respondents "shall not remove Petitioner from the United States or transfer Petitioner to another facility without providing Petitioner's counsel with at least 48 hours' notice of the removal or transfer." (*Id.*) On that same day, ERO served Mr. Pantoja with a notice of removal informing him that ICE intends to remove him to Mexico. (Benjamin Decl. ¶ 18.) Mr. Pantoja refused to sign the notice of removal. (Lambert Decl. ¶ 2, Ex. K.) On December 8, 2025, USCIS determined that Mr. Pantoja did not establish that it was more likely than not that he would be persecuted or tortured in Mexico. (Benjamin Decl. ¶ 19.)

On December 17, 2025, Respondents filed their return and gave Mr. Pantoja's attorneys 48-hour notice of Mr. Pantoja's imminent removal to Mexico. (Return; *see* TRO Mot. (Dkt. # 10), Ex. 1; *see also* Benjamin Decl. ¶ 20 (stating that ERO "expects that [Mr. Pantoja] will be removed to Mexico by this weekend, December 20, 2025").) The next day, December 18, 2025, Mr. Pantoja moved for a temporary restraining order to prevent Respondents from deporting him to Mexico. (TRO Mot.) The court provisionally granted the motion for the purpose of maintaining the status quo pending the completion of briefing. (12/18/25 Order (Dkt. # 11).) Subsequently, the parties stipulated to a order withdrawing Mr. Pantoja's TRO motion and prohibiting Mr.

Pantoja's transfer or removal during the pendency of these proceedings. (*See* 12/19/25 Order (Dkt. # 13) (granting the parties' stipulated motion).)

Mr. Pantoja filed his response to Respondents' return on December 22, 2025. (Response.) The petition is now fully briefed and ripe for decision. As of the date of this order, Mr. Pantoja has been continuously detained for over eight months.

### III.   ANALYSIS

To succeed on a habeas petition, a petitioner must show that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). For the reasons set forth below, the court grants Mr. Pantoja's petition for writ of habeas corpus.

**A.    Mr. Pantoja's Continued Detention is Unlawful**

"When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible . . . , removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

The INA does not, however, authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause[.]" *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

When challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, Respondents "must respond with evidence sufficient to rebut that showing." *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. Respondents' burden to justify continued detention thus becomes increasingly demanding over time. *See id.* If Respondents fail to meet their burden, then they must release the noncitizen from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Here, Mr. Pantoja asserts that Respondents cannot show that there is a significant likelihood that they will be able to remove him to either Cuba or Mexico in the reasonably foreseeable future. (*See* Petition at 7-9; Response at 2.) The court agrees. First, although Mr. Pantoja has been subject to a final order of removal since 2011, Respondents have failed to remove him to Cuba in the 15 years that have since elapsed. Respondents do not meaningfully dispute that his removal to Cuba is unlikely. (*See*

*generally* Return.) Second, as Mr. Pantoja points out, Respondents have provided no evidence that they have in fact obtained travel documents to facilitate his removal to Mexico. (*See* Response at 2; *see generally* Return.) And third, Respondents do not contest Mr. Pantoja's assertion that Mexico is unlikely to accept Mr. Pantoja absent his consent to be removed to Mexico. (*See generally* Return.) Mr. Pantoja presents a declaration in which an ICE Deportation Officer in San Diego states that Mexico recently refused to accept the resettlement of a Cuban detainee who "refused to willingly go to Mexico" and that the Mexican government "was ready to accept [the Cuban detainee] only if he would willingly go to Mexico." (Petition, Ex. 4 (Declaration of Martin Parsons, *Rios v. Noem et al.*, No. 3:25-cv-02866-JES-VET (S.D. Cal. Nov. 5, 2025), ECF 13-1 ("Parsons Decl.")) ¶ 11.) Mr. Pantoja has not consented to removal to Mexico (Petition at 9) and Respondents say nothing about why they believe Mexico would accept him despite his unwillingness to go there (*see generally* Return). Therefore, the court concludes that Mr. Pantoja has met his burden to show that his removal to Cuba or Mexico is unlikely to take place in the foreseeable future and is entitled to immediate release from custody.

### B.    The *D.V.D.* Class Action Does Not Bar Mr. Pantoja's Third-Country Removal Claims

Respondents argue that the court must dismiss Mr. Pantoja's third-country removal claims because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass. 2025). (Return at 13-15.) In that case, the plaintiff class sought and received an injunction barring ICE from removing

class members to third countries. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025). The Supreme Court, however, stayed that injunction. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).; *Dep't of Homeland Sec. v. D. V. D.*, 145 S. Ct. 2627, 2629 (2025) (clarifying the Court's prior order). According to Respondents, Mr. Pantoja "cannot end-run" the Supreme Court's stay "by seeking the same relief in a different court." (Return at 2.)

The court disagrees with Respondents. This case is similar to *Sanchez v. Bondi*, No. C25-2573KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026), in which a judge of this District concluded that membership in the *D.V.D.* class did not preclude a Cuban national from asserting third-party removal claims. First, "dismissal of individual claims that duplicate a class action is not required, rather, it is within the court's discretion and grounded in its inherent power to control its own docket." *Id.* at *5 (citations and quotation marks omitted). And second, for the reasons thoroughly explained in *Nguyen v. Scott*, 796 F. Supp. 3d 703, 730-33 (W.D. Wash. 2025), the court rejects Respondents' contention that Mr. Pantoja's petition should be dismissed because the Supreme Court's stay order in *D.V.D.* is precedential and binding. *See Nguyen*, 796 F. Supp. 3d at 730-33 (concluding that the Supreme Court's stay order is not precedential because the Court offered no reasoning or detail explaining why it granted the stay); *Sanchez*, 2026 WL 160882 at *5 (compiling cases rejecting the contention that a petitioner's *D.V.D.* class membership bars third-country removal claims). Thus, the court concludes that Mr. Pantoja's membership in the *D.V.D.* class does not prevent the court from adjudicating his claims for individual relief in this habeas action.

**C.      Requests for Injunctive Relief**

Mr. Pantoja seeks injunctive relief including: (1) an order preventing his re-detention unless the government establishes by clear and convincing evidence at a hearing that he is a flight risk or a danger to the community; (2) an order preventing his removal to a third country without notice and a meaningful opportunity to respond; and (3) an order barring his removal to a third country pursuant to Respondents' allegedly punitive removal policy. (Petition at 30-31.) The court grants these requests in part.

   1.      <u>Respondents must comply with federal regulations regarding re-detention of noncitizens subject to an OSUP</u>

Mr. Pantoja asserts that he is entitled to a hearing before Respondents attempt to re-detain him. Respondents do not address this request. (*See generally* Return.) The court grants Mr. Pantoja's request to the extent he seeks notice and a meaningful opportunity to be heard before he is re-detained.

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. That regulation states, in relevant part, that Respondents may revoke a noncitizen's release and return the noncitizen to custody (1) if the noncitizen violates the conditions of release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1), (2). The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to

respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Accordingly, if Respondents seek to re-detain Mr. Pantoja in the future, they must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

    2.    <u>Mr. Pantoja is entitled to notice and a meaningful opportunity to be heard before any attempted third-country removal</u>

If the government cannot remove a noncitizen to the country specified in the removal order, it may attempt to remove the noncitizen to a third country in compliance with 8 U.S.C. § 1231(b) and the Due Process Clause. *Sanchez*, 2026 WL 160882, at *6 (citations omitted). "To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country." *Id.* (citations omitted). Thus, the court concludes, as have other courts in this District, that if Respondents take steps to remove Mr. Pantoja to a country other than Cuba, "they must provide [him] with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)." *Id.* at *7 (citing *Nguyen*, 796 F. Supp. 3d at 727, and *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010-11 (W.D. Wash. 2019)).

    3.    <u>The court denies Mr. Pantoja's request for an injunction prohibiting his removal to a third country</u>

Finally, Mr. Pantoja seeks an order prohibiting his removal to any third country, arguing that removal to any country other than Cuba constitutes punitive third-country banishment in violation of the Fifth and Eighth Amendments. (*See* Petition at 29-30.) Respondents assert that this claim cannot survive because Mr. Pantoja "does not allege

what harm he personally faces if so removed, or any circumstances that would make removal to any specific country punitive in his case[,]" and "provides no evidence that his speculative removal to a third country would result in imprisonment or harm." (Return at 15-16.) The court agrees with Respondents that, on the record before it, Mr. Pantoja's punitive third-country removal claim is speculative and that Mr. Pantoja has not demonstrated a likelihood of irreparable injury that would entitle him to a permanent injunction prohibiting Respondents from removing him to any third country. *See Sanchez*, 2026 WL 160882 at *6 (so concluding where petitioner "provide[d] no facts specific to his circumstances that support[ed] enjoining Respondents from removing him to any third country, such as identifying a target third country where he might suffer persecution or torture"). Therefore, the court denies without prejudice Mr. Pantoja's request to enjoin Respondents from removing him to a third country in the future.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Pantoja's petition for writ of habeas corpus (Dkt. # 1). The court ORDERS as follows:

(1) Respondents are ORDERED to immediately release Mr. Pantoja from custody subject to the conditions of his most recent order of supervision;

(2) Respondents are ORDERED to file, by no later than **48 hours** after the issuance of this order, an affidavit confirming that Mr. Pantoja has been released from custody;

//

//

ORDER - 11

1    (3) Respondents are ENJOINED from re-detaining Mr. Pantoja without providing
2 notice and a meaningful opportunity to respond in compliance with 8 C.F.R. § 241.13;
3 and
4    (4) Respondents are ENJOINED from removing Mr. Pantoja to a country other
5 than Cuba without notice and a meaningful opportunity to respond in reopened removal
6 proceedings before an immigration judge.
7    Dated this 30th day of January, 2026.

JAMES L. ROBART
United States District Judge